UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

GLEN SPIERS                                                                                       PLAINTIFF

VERSUS                                                         CIVIL ACTION NO. 1:04CV123-LG-RHW

COMMISSIONER OF SOCIAL SECURITY                                                   DEFENDANT

### PROPOSED FINDINGS OF FACT AND RECOMMENDATION

### Procedural History and Factual Background

Claimant Glen Spiers filed an application for Disability Insurance Benefits on November 21, 2001.  An Administrative Law Judge (ALJ) conducted a hearing and denied the application. The ALJ found that Claimant was not disabled because he retained the residual functional capacity to perform work at the light exertional level that allowed for a sit/stand option and not requiring hearing in other than a quiet room without background noises.  The ALJ further found that Claimant could perform jobs that existed in significant numbers in the region and nationally. The Appeals Council affirmed the ALJ's decision, and Claimant filed the instant appeal on March 12, 2004.

Claimant was born in 1957.  He is a high school graduate with past relevant work as a heavy equipment or crane operator.  Claimant testified that he stopped working in April 1999 because of pain in his feet and lack of sleep at night because of pain.  These symptoms were alleged to be the result of diabetes.  Claimant has been diagnosed with type II diabetes and diabetic neuropathy.

Dr. Willis examined claimant and determined that Claimant has no hearing in his right ear and a 30 decibel hearing loss in low frequency in the left ear.  The hearing loss was a result of

a childhood accident.

In April 2000, Claimant was treated for a twisted knee injury. Dr. Graham opined that Claimant had a bucket handle tear of the medial meniscus. Dr. Graham performed surgery on Claimant's right knee to repair the injury. On June 7, 2000, Dr. Graham reported that Plaintiff had reached maximum medical improvement, with no permanent partial disability and no work restrictions other than jumping.

Dr. Kergosien has examined and treated Claimant on numerous occasions. Dr. Kergosien diagnosed Claimant with type II diabetes and diabetic neuropathy since November 1999. In a June 14, 2000 letter, Dr. Kergosien opined that Plaintiff was unable to sit, stand, bend down or remain in one position for more than ten minutes at a time because of pain. In a letter dated May 5, 2003, Dr. Kergosien indicated that Claimant is able to stand and walk for about ten to fifteen minutes at a time without having to recline and elevate his lower extremities.

Work Force Rehab performed a functional capacity evaluation on December 19 and 20, 2000, which indicated that Claimant could safely work at the sedentary to light work level. Claimant demonstrated the ability to lift 5 to 10 pounds frequently and up to 25 pounds occasionally to frequently. Furthermore, Claimant demonstrated no restriction on sitting and could stand for 45 minutes to an hour before pain interfered with his ability to continue.

Dr. Terry Millette examined Claimant on September 16, 2002. He diagnosed Plaintiff with daily muscle contraction type headaches with cervical myofascial contribution. He further noted Claimant's sleep disturbance and mild neuropathy. Included in the record are two Residual Functional Capacity questionnaires prepared by Dr. Millette. In the first, Dr. Millette placed question marks next to most of the questions and indicated that he had seen the patient only once.

However, he did opine that Claimant had no significant limitations in doing repetitive reaching, handling, or fingering. In the second questionnaire, Dr. Millette identified clinical findings of sensory loss in Claimant's feet and hands. Among other findings, he concluded that pain or other symptoms constantly interfered with Claimant's attention and concentration. He indicated that Clamant is incapable of even low stress jobs and that Claimant would fail in a competitive work situation. As for limitations, Dr. Millette found that Claimant is capable of sitting for 30 minutes at one time, and capable of standing for 15 minutes.

At the hearing, Claimant and his wife each testified as to Claimant's pain and physical limitations. The ALJ also questioned a vocational expert regarding Claimant's limitations and his ability to perform substantial gainful employment. The ALJ posed as his hypothetical that the Claimant has difficulty hearing with background noise, can lift up to 20 pounds occasionally and ten pounds frequently, and would need a sit or stand option at his job. Furthermore, the Claimant could not persist with sitting or standing throughout the day but would need to prop his feet up at unpredictable times. The vocational expert testified that with those limitations the Claimant could not return to his past relevant work. However, the vocational expert stated that Claimant could work as an adult companion, of which there are about 1,100 jobs in Mississippi and 60,000 in the United States.

## **Law and Analysis**

Claimant seeks a reversal of the Commissioner's decision pursuant to the Social Security Act, 42 U.S.C. § 405(g), which provides in relevant part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a

rehearing.

Additionally, 405(g) provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."

The standard of review applied to the Commissioner's decision is limited to an inquiry into whether there is "substantial evidence" to support the ALJ's findings  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971), and whether the ALJ applied the correct legal standards.  42 U.S.C. 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  "Substantial evidence" is defined as "more than a mere scintilla," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427, quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

The Fifth Circuit has elaborated that "substantial evidence":

must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found on ly where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir.1988), quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983); *Abshire v. Bowen*, 848 F.2d 638 , 640 (5th Cir. 1988); *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983); *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973).  It is well-settled that written medical reports by licensed medical physicians who have examined the claimant may constitute "substantial evidence" in a Social Security case.  *Bowman v. Heckler*, 706 F.2d 564 (5th Cir. 1983), quoting *Green v. Schweiker*, 694 F.2d 108, 111 (5th Cir. 1982).

While the District Court must scrutinize the record in its entirety to determine the reasonableness of the Commissioner's decision*, Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir.

1992); *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983); *Anderson v. Schweiker*, 651 F.2d 306, 308 (5th Cir.1981), the court must not re-weigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner.  *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).  Any conflicts in the evidence are for the Commissioner to decide, and if substantial evidence exists to support the decision, it must be affirmed, even in light of contrary evidence.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990), *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994), *Harrell*, 862 F.2d at 475.  If evidence exists to support the Commissioner's ruling, it is conclusive and must be upheld. *Richardson*, 402 U.S. at 390, 91 S.Ct. 1420 at 1422, 28 L.Ed.2d 842 (1971).

Social Security disability claimants bear the burden of proof in a disability case.  *Kraemer v. Sullivan*, 885 F.2d 204, 206 (5th Cir. 1989); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir.1987).  A claimant must produce "objective medical evidence of a condition that could reasonably produce the level of pain alleged."  *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989), *citing Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir.1989); *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir.1995); 42 U.S.C. §423(d)(5)(A); 20 C.F.R. § 416.209.  Determinations of credibility rest with the ALJ as the trier of fact.  *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981).

The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity due to physical or mental impairment(s) which can be expected to result in death or last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A), 20 C.F.R. § 404.1505(a).  20 C.F.R. § 404.1520 provides a five-step evaluation process utilized in determining whether a claimant is "disabled" within the meaning of the Social Security Act.

These steps include, in summary:

>   (1)  whether claimant has engaged in substantial gainful activity since the alleged onset date;
>   (2)  whether claimant has impairment that limits physical and mental ability to do basic work activity;
>   (3)  whether claimant's alleged impairments meet or equal in severity any listed impairments found in Appendix 1 to Subpart P, Regulations No.4;
>   (4)  an assessment of claimant's residual functional capacity and an evaluation in light of this capacity whether she can perform her past work;
>   (5)  if an individual is found unable to perform her past work, the burden shifts to the Commissioner to prove that there are other occupations existing in significant numbers which the claimant can perform, given her age, education, experience, and residual functional capacity.

Claimant argues that the ALJ failed to give proper weight to the opinion of his treating physicians, Dr. Kergosien and Dr. Millette, under the theory that a claimant's treating physician's opinion is entitled to the greatest weight. *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir.1983).

Social Security regulations provide that the opinion of a treating physician is to be given controlling weight if the opinion is well-supported by clinical and laboratory findings and is not inconsistent with other substantial evidence in the record. 20 C.F.R. 404.1527(d)(2). In determining whether to give weight to a treating physician's opinion, an ALJ must consider such factors as length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Myers v. Apfel,* 238 F.3d 617 (5th Cir.2001). The ALJ may accord lesser weight to a treating physician's opinion for good cause, such as where the treating physician's opinion is conclusory, not credible, or unsupported by objective medical evidence or clinical laboratory findings. *Scott v. Heckler,* 770 F.2d 482 (5th Cir. 1985), *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994), *Leggett v. Chater*, 67 F.3d 558 (5th Cir.1995). If the ALJ determines that all treating source(s)'

records are inadequate and further information is required, the ALJ must seek clarification or additional evidence from the treating source in accordance with 20 C.F.R. 404.1512(e); *Id.* Medical opinions are statements from an acceptable source about the nature and severity of an individual's impairments, including what the individual can still do despite the impairments. However, an ALJ is not bound to accept statements that an individual cannot work or is disabled, as such statements are reserved for the Commissioner to decide.  20 C.F.R.404.1527 (e)(1), 416.927(e)(1).

As an initial matter, the ALJ did not identify Dr. Millette as a  "treating physician" in his decision.  Dr. Millette examined Claimant on only one occasion–September 16, 2002.  The Social Security regulations define a treating physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant.  20 C.F.R. § 404.1502.  There is no record that Dr. Millette had an ongoing treatment relationship with Claimant; therefore, the ALJ did not err in failing to consider Dr. Millette as a treating physician.

Dr. Kergosien examined Claimant on several occasions and was identified by the ALJ as Claimant's treating physician.  Dr. Kergosien twice offered opinions about Claimant's limitations.  In a letter dated June 14, 2000, Dr. Kergosien wrote that Claimant

> was seen for an unscheduled visit on 4/26/00 due to headaches that began as a side effect of a medication, Pletal, which had been started on 3/23/00.
>
> Spiers is unable to sit, stand, bend down, or remain in one position for greater than ten minutes due to pain.

Dr. Kergosien did not provide any objective medical evidence or clinical laboratory findings to support his conclusions regarding Claimant's limitations.  On May 5, 2003, Dr. Kergosien wrote

7

a second letter regarding Claimant's limitations in which he stated

> Mr. Spiers has been under my care since 2000. I have been treating for severe painful neuropathy which has worsened over time. He is only able to stand and walk for about ten to fifteen minutes at a time without having to recline and elevate his lower extremities to relieve his pain.
>
> This pain becomes so severe at night that he is unable to sleep. He gets up several times each night to walk, as this is the only technique which reduces the level of his pain.

Again, Dr. Kergosien's letter does not offer any objective medical evidence or clinical laboratory findings to support his conclusions. The ALJ examined Dr. Kergosien's opinions at some length.[1] The ALJ found good cause not to give any weight to Dr. Kergosien's assessment precisely because Dr. Kergosien provided no support for his estimates of what Claimant can and cannot do. Even so, the ALJ took into account the fact that Claimant would need a sit/stand option in any prospective employment, as well as the fact that Claimant would need to sit down and elevate his lower extremities at unpredictable times.

      The ALJ gave greater weight to Dr. Crittenden's findings and opinions. Dr. Crittenden examined Claimant on one occasion. Dr. Crittenden essentially found Claimant's test results to be normal but with some mild sensory changes in the feet. The ALJ further found that Dr. Crittenden's findings corroborated the residual functional capacity assessment prepared by the Work Force Rehab facility, which concluded that Claimant was capable of performing sedentary to light demand work.

      Based on Dr. Kergosien's lack of objective medical evidence and laboratory findings to support his conclusions regarding Claimant's limitations, the undersigned finds that the ALJ did

---

[1] In his analysis, the ALJ incorrectly attributed to Dr. Kergosien a functional capacity evaluation prepared by Dr. Millette. *See* Tr. 174-76.

not err in not giving controlling weight to Dr. Kergosien's opinion.  Moreover, the findings of Dr. Crittenden and the functional capacity assessment prepared by the Work Force Rehab facility constitute substantial evidence that Claimant is capable of performing a limited range of sedentary work.

As an additional aside, Claimant argues that the ALJ did not consider Claimant's non-exertional factors–pain and the side affects of medication–in reaching his conclusions.  In his opinion the ALJ noted that he must take into account all symptoms, including pain.  Claimant's limitations are based on pain; therefore, implicit in the limitations posed to the vocational expert, is the due consideration of Claimant's pain.  In fact, the ALJ concluded that "[t]he claimant's ability to perform all or substantially all of the requirements of light work is impeded by additional exertional and/or non-exertional limitations.  Thus, an impartial vocational expert may be used. . ."  Tr. 21.  In fact, the ALJ did use a vocational expert, as required when taking into consideration any non-exertional limitations.  *See Newton v. Apfel*, 209 F.3d 48, 458 (5th Cir. 2000).

Claimant next argues that the ALJ erred in finding that there are jobs in significant numbers in the regional and national economies that Claimant could perform.  Based on the vocational expert's opinion, the ALJ found that there are 1,100 jobs in Mississippi and 60,000 in the United States as an adult companion that could be performed by Claimant.  Claimant argues that the percentage of jobs is not significant.  The undersigned finds that the ALJ did not err in concluding that there are significant jobs in the regional and national economies.  *See Baker v. Secretary of HHS*, 882 F.2d 1474, 1479 (9th Cir. 1989) (holding 1,266 jobs to be significant number of jobs); *Jenkins v. Bowen*, (8th Cir. 1988)(holding as few as 500 jobs to be significant

number); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 jobs held to be significant).

## RECOMMENDATION

The undersigned recommends that Claimant's [14] Motion to Reverse be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who objects to this Recommendation must, within ten (10) days after being served a copy of the Recommendation, serve and file with the Clerk of Court his written objections to the Recommendation, with a copy to the District Judge, the U.S. Magistrate Judge and the opposing party. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. A party's failure to file objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court. A party who fails to file written objections to the proposed findings, conclusions and Recommendation within ten (10) days after being served with a copy, shall be barred, except upon the grounds of plain error, from attacking on appeal any proposed factual finding and legal conclusion accepted by the District Court to which the party did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 14th day of February, 2007.

               s/ *Robert H. Walker*
               UNITED STATES MAGISTRATE JUDGE